𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

TANNER   V.   CULPEPER   CONSTRUCTION   COMPANY   AND
ANOTHER.

January 12, 1915.

Absent, Keith, P.

1.   MUNICIPAL   CORPORATIONS — *Obstructions   on   Streets — Steam
Roller—Negligence.*—Steam rollers are necessary and in com-
mon use in macadamizing streets and roads, and a city or
town may lawfully use them in constructing or repairing its
streets, and, in the absence of negligence in their management
it is not liable in damages for injuries resulting from horses
becoming frightened at them, when in use, or when tempo-
rarily left in appropriate places on the streets when not in
actual use while the work of construction or of improvement
is in progress.

2.   MUNICIPAL   CORPORATIONS—*Steam   Roller   Left   on   Street—Negli-
gence—Question   for   Jury.*—Whether leaving a steam roller
on the streets of a town for a period of two months during
the winter when the weather is generally too bad to admit of
its use on the streets is negligence is a question of fact for
the jury; for negligence is the absence of ordinary care under
the circumstances, and where the duty of care is not fixed,
but varies with the circumstances, the case is for the jury,
and whatever inferences may arise from the facts proved or
admitted, where there is no established standard of judgment,
it is the province of the jury to draw such inferences.

3.   MUNICIPAL   CORPORATIONS—*Steam   Roller   Left   on   Street—Negli-
gence—Question   of   Fact   Not   of   Law.*—In passing upon the
question whether or not defendants were guilty of negligence
in permitting a steam roller to remain on the streets of a
town for two months during winter, it was the province and
duty of the jury to consider all the evidence introduced tend-
ing to prove or disprove that issue, and an instruction which
deprived them of that right and undertook to decide it as a
question of law, was erroneous.

4.   MUNICIPAL   CORPORATIONS—*Obstructed   Street—Negligent   Use
by   Traveler.*—Where a person has been in the habit of trav-

eling along a particular street of a town which was open for travel, and was being traveled by others, the fact that he might have gone some other route of which he knew, or of which he could by ordinary care have known and selected, and thereby have avoided the danger of passing a steam roller on the street on which he was traveling, and did not do so, did not render him guilty of negligence unless the danger from passing the steam roller was apparently so great that ordinarily prudent men would not have undertaken to drive by it. The fact that his horse showed evidence of fright when he was in twenty or thirty feet of the roller was not conclusive evidence that he was assuming a known place of danger.

5. HIGHWAYS—*Obstruction—Attempt to Pass—What Constitutes Negligence.*—Ordinary care does not require one absolutely to refrain from exposing himself to danger. It does require such watchfulness and precaution to avoid coming in contact with danger as a person of ordinary prudence would use under like circumstances for his own protection in view of the danger to be avoided, and where a person in the lawful use of a highway encounters any obstruction, he may attempt to pass it, if it is consistent with reasonable care to do so, and this is generally a question for the jury, depending upon all the circumstances of the case. It is pertinent, however, to inquire whether the danger could have been altogether avoided without serious inconvenience.

6. PLEADING—*Joint Action—Joint and Separate Counts Cannot be United.*—In an action against several persons, whether in contract or tort, all the causes of action must be stated to be joint. A declaration which alleges a joint tort in some counts and several torts in others is bad on demurrer.

7. APPEAL AND ERROR—*Demurrer Improperly Overruled—What Judgment to be Entered on Reversal.*—Where the trial court improperly overruled a demurrer to a declaration in tort some counts of which charged a joint tort against two defendants and others separate counts against each defendant, this court, on reversing the judgment, will not enter final judgment for the defendant, but will remand the case to the trial court with directions to permit the plaintiff to withdraw his joinder in the demurrer and amend his declaration.

Error to a judgment of the Circuit Court of Culpeper county in an action of trespass on the case. Judgment for the defendants. Plaintiff assigns error.

*Reversed.*

The opinion states the case.

*Gibson & Nottingham,* for the plaintiff in error.

*Waite, Perry & Jeffries, Grimsley & Miller* and *E. E. Johnson,* for the defendants in error.

BUCHANAN, J., delivered the opinion of the court.

George E. Tanner, the plaintiff in error, brought an action against the defendants in error, the town of Culpeper and the Culpeper Construction Company, to recover damages for personal injuries to him caused by the alleged negligence of the defendants. The negligence averred consisted in this, that for many weeks prior to his injury on the 21st day of February, 1913, the defendants had negligently and knowingly stored, located and maintained upon Main street, a public highway in said town, a large steam roller, weighing about ten tons, so as to occupy a considerable part of the street, leaving only a narrow passageway for the passage of persons traveling in vehicles, and so close that it was calculated to frighten horses of ordinary gentleness; and that while the plaintiff was driving along said street, with due care, in a single wagon occupied by himself and his son, seven years of age, his horse became frightened at the roller, was rendered unmanageable, and ran for a distance of one hundred feet, breaking the plaintiff's arm, disfiguring and permanently disabling him.

The evidence tends to show that the steam roller was the property of the defendant construction company, which was a contractor engaged in macadamizing the streets of the town and certain roads in Culpeper county under a contract with its board of supervisors: that the steam roller was necessary for and had been used by the construction company for rolling the macadam work which was being

done by it in the town: that the work of macadamizing had commenced in August of 1912: that about the 20th of December following the roller was placed on the side of the said street and had remained there until the 17th of February, 1913, when it was taken to another part of the work not on Main street to put it in better shape before the State Highway Commissioner inspected it: that the roller was brought back the same day to the same place on Main street and remained there until the day the plaintiff was injured: that the construction company was macadamizing Main street when it suspended work or was prevented from working on account of bad weather: that if weather conditions had permitted during the time the roller stood idle at the place where it was from December 20 to the time of the accident, it would have been used, but that generally the conditions of the weather are such in the winter months that little if any macadamizing can be done during that period, though there are exceptions, but not often, to the rule: that the roller had not been used or moved from the place where it was left December 20 (except on the 17th of February) as above set out until the day after the accident when it was removed from the street to a lot where it remained until early spring; that the next work to be done by the roller was on the street upon which it stood when the plaintiff was injured; that the street was open for travel during the period the roller was thus left on it; that there was more travel over that street than any other in the town (which has a population of 2,000) ; that there were other streets in the town over which the plaintiff could have conveniently passed; that he lived in another county and was not well acquainted with the streets of the town and had never gone over any other on his way to Rixeyville where he was going; that the plaintiff's horse, which he had owned about one month, was gentle, but when she was within a short distance of the roller—the plaintiff

says from twenty to thirty feet and another witness from twenty to thirty yards—she became frightened; and that the plaintiff got out of his buggy, took her by the bridle and was leading her by the roller when she became so badly frightened that she ran away, though he held on to her for some distance to save the life of his child who was in the buggy when the horse ran away, breaking his arm near the shoulder, and inflicting other injuries to his person which are described.

The errors assigned by the plaintiff in error, so far as it is necessary to consider them in the view we take of the case, are based upon the action of the court in giving and refusing instructions. Each party asked for eleven instructions, although there only seems to be two material propositions of law about which the parties actually differ. One is whether or not the defendants were guilty of negligence in placing and leaving the steam roller upon the street, and, if so, whether the plaintiff was guilty of contributory negligence when the injuries complained of were suffered?

While it is well settled that municipalities are liable for injuries resulting from the existence of objects in the street calculated to frighten horses of ordinary gentleness, and which do in fact frighten horses and cause injury, although neither the horse nor the vehicle to which it is hitched come in actual contact with the object which causes the fright, it also seems to be equally well settled that no recovery can be had where such object is one necessarily used by the municipality, or some one acting under its authority, in improving the street, and is placed on the side of the street while improving it, unless allowed to remain there an unreasonable time. See 4 Dillon on Mun. Corp., section 1102; 6 McQuillan on Mun. Corp., section 2783; 5 Thompson on Negligence, section 6081, and cases cited.

Steam rollers are necessary and in common use in macadamizing streets and roads, and a city or town may lawfully use them in constructing or repairing its streets, and in the absence of negligence in their management it is not liable in damages for injuries resulting from horses becoming frightened at them, when in use, or when temporarily left in appropriate places on the streets when not in actual use while the work of construction or improving is in progress.

In the case of *District of Columbia* v. *Moulton,* 182 U. S. 577, 21 Sup. Ct. 840, 45 L. Ed. 1237, it appeared that for several days prior to the accident in question, a large steam roller had been used in connection with the work of resurfacing Park street with macadam; that while being so used the day before the accident it "broke down" and was removed by horse power to the curb of the street for repairs and was standing there the next eveiing when the plaintiff's horse took fright and he suffered the injuries complained of. In that case it was held that there was no evidence of negligence on the part of the city justifying the court in submitting that question to the jury.

In *Keeley, etc.,* v. *Shanley, etc.,* 140 Pa. 213, 21 Atl. 305, it was held that where the use of a steam rolling machine is necessary in the lawful construction or repair of a macadamized roadway, upon a highway already open for public travel, such use is lawful and it is not negligence *per se* to permit the machine to stand on the highway at rest over Sunday when it was a reasonably necessary incident to its use.

In these cases the work was in progress and was interrupted, in the former case by the breaking down of the roller and it was left on the side of the street for less than two days and only awaited repairs to be used again. In the latter case the roller was permitted to remain at rest on

the street over Sunday to be used again on Monday. In the case under consideration, the roller had remained at the same place upon the street for two months unused, except for a day or part of a day three or four days before the accident. While the macadamizing on Main street had not been completed and the roller was on the street where it had been last used and where it was to be used next, it can hardly be said under the evidence that the macadamizing was in course of construction. The evidence showed that the roller had not been used on that street for more than two months, and tended to show that as a rule that work with a steam roller cannot be carried on during the winter after the weather becomes bad, because the periods of good weather are afterwards generally so short that the ground does not get in condition to do such work, and that while there are exceptions to the rule, it does not often happen in the winter time that such work can be done.

Whether, therefore, leaving the steam roller on the street under the facts and circumstances of this case could be regarded as negligence was a question of fact for the jury; for negligence is the absence of ordinary care under the circumstances, and where the duty of care is not fixed but varies with the circumstances, the case is for the jury, and whatever inferences may arise from facts proved or admitted, where there is no established standard of judgment, it is the province of the jury to draw such inferences.

Upon this question of negligence or reasonable care both parties asked for instructions. Those offered by the plaintiff, numbered 1 and 2, the court refused to give, but gave those offered by the defendants, which were as follows:

1. "If the jury believe from the evidence that the defendant, the Construction Company, was engaged in laying and rolling macadam on Main street in the town of Culpeper, between Spencer and Cameron streets, and that their work was interfered with by reason of weather conditions, and

that they left the roller on the said street at the point indicated in the evidence for the purpose of resuming work at that point as soon as the weather conditions would permit, then they were not guilty of negligence in so doing, and you must find for the defendant."

2. "The court instructs the jury that if they believe from the evidence that the steam roller mentioned in the declaration had been used by the Culpeper Construction Company under their contract to repair the streets of the town of Culpeper, that the use of said machine had been temporarily suspended and the same had been placed on the side of the street, giving ample room for the passage of vehicles and to be again used in the prosecution of said work when occasion therefor should arise, and that the company intended to resume work at the place as soon as the weather would permit, and if they believe from the evidence that the use of said machine was necessary to the proper performance of said work, then the jury are instructed that such use of said *road* (roller) included the right to retain same upon the streets until a reasonable time after the necessity for the use thereof had terminated, and if they believe from the evidence that the plaintiff's horse was frightened while the said roller was on said street under the circumstances hereinbefore detailed, the plaintiff cannot recover in this case."

The effect of the instructions given was to declare as a matter of law that the placing of the steam roller on Main street where it was being used before the weather conditions interrupted the work, and leaving it there for the purpose of resuming work on that street as soon as weather conditions would permit, was not negligence, although the evidence tended to show that during the time it was left on that street, when the defendants could not reasonably have expected on account of the usual weather conditions during the winter months that they would be able to use it much

21

if at all, and when in fact it had not been so used for more than two months. In passing upon the question whether or not the defendants were guilty of negligence, it was the province and duty of the jury to consider all the evidence introduced tending to prove or disprove that issue, and an instruction which deprived them of that right was erroneous. The court erred in giving those instructions, but it did not err in refusing to give instructions Nos. 1 and 2 offered by the plaintiffs, since they were erroneous also in depriving the jury of the right to determine the question of negligence upon all the evidence.

The next question to be considered is whether or not the jury were properly instructed upon the question of the alleged contributory negligence of the plaintiff.

The court, upon the defendants' motion, gave the following instructions:

3. "The court further instructs the jury that where one has in view a certain destination and can reach the same by pursuing either of several routes, along one of which routes there is apparent danger, along the others of which there is no apparent danger, and of which he knows or by the use of ordinary care could have known and selected, if the plaintiff selects the route upon which there is apparent danger and pursues this route and injuries result therefrom, then the finding must be for the defendants, because under these circumstances the plaintiff is guilty of contributory negligence; and this is true although they may further believe that the defendants were guilty of negligence as alleged in the declaration."

4. "The court instructs the jury that it is the duty of every person to avoid as far as practicable, unnecessary danger, and if they believe from the evidence that as soon as the plaintiff's horse gave evidence of fright at the steam roller mentioned in the declaration he could have turned around and gone by way of another street, which was rea-

sonably near and of which he knew or by the exercise of ordinary diligence could have known of and used, and thus avoided passing the said roller and avoided the accident of which he complains, he should have done so and a failure so to do was contributory negligence which will bar a recovery in this case."

5. "The court instructs the jury that even if they do believe from the evidence that the steam roller as located at the place named in the declaration was reasonably calculated to frighten horses of ordinary gentleness; if they further believe that the same was in plain view of the plaintiff as he approached it, and that before the horse became frightened and after he had seen the roller at a time and place when he could without material inconvenience to himself have taken another street and avoided passing the roller and failed to do so but undertook to pass it, he was guilty of contributory negligence in so doing and they should find for the defendants. And especially is this true if the jury believe that the plaintiff was driving a horse with which he was not thoroughly acquainted."

The existence of the facts hypothetically stated in each of these instructions did not *per se* show that the plaintiff was guilty of contributory negligence. The plaintiff was traveling upon a street upon which he had always traveled in going to his point of destination, and which was open for travel and was being traveled by others. This being so, the fact that he might have gone some other route of which he knew, or of which he could by ordinary care have known and selected, and have thus avoided the danger of passing the steam roller and did not do so, did not render him guilty of negligence, unless the danger from passing the steam roller was apparently so great that ordinarily prudent men would not have undertaken to drive by it. The fact that his horse showed evidence of fright when he was within twenty or thirty feet of the steam roller

was not conclusive that the plaintiff was assuming a known place of danger. The experience of mankind is the opposite. There are few horses, especially those not accustomed to passing through streets of towns or cities that will not shy a little at passing some of the many objects that are frequently, if not constantly, met with in such streets, yet actual danger therefrom is not apprehended.

It was held in *Newport News, &c. Co.* v. *Bradford,* 99 Va. 117, 37 S. E. 807, that ordinary care does not require one absolutely to refrain from exposing himself to danger. It does require such watchfulness and precaution to avoid coming into contact with danger as a person of ordinary prudence would use under like circumstances for his own protection in view of the danger to be avoided, and that where a person in the lawful use of the highway encounters any obstruction, he may attempt to pass it, if it is consistent with reasonable care to do so, and this is generally a question for the jury depending upon all the circumstances of the particular case. It is pertinent however, in connection with other facts, to inquire whether the danger could have been altogether avoided without serious inconvenience. The rule laid down in that case has been reiterated and approved in our later cases, and is in accord with the great weight of authority. *City of Charlottesville* v. *Stratton's Admr.,* 102 Va. 95, 99, 45 S. E. 737.

It follows from what has been said that the court is of opinion that the jury were not properly instructed, either upon the question of negligence or of contributory negligence, and that the judgment complained of will have to be reversed for such errors. Sufficient has been said in discussing the questions of negligence and contributory negligence to guide the circuit court upon the next trial, without discussing in detail the other errors assigned by the plaintiff.

Upon the trial of the cause, after all the evidence had been introduced and the instructions to the jury were being argued, the plaintiff, it seems, in order to void a variance between the proof and the averments of the original declaration, which contained only one count stating a joint tort against both defendants, was permitted to amend his declaration. Under this leave he filed an amended declaration containing four counts. The first and second counts charged a joint tort against both defendants, and the third a several tort against the defendant construction company, and the fourth count a several tort against the town of Culpeper. There was a demurrer to the amended declaration and to each count thereof, which was overruled. The action of the court in overruling that demurrer is assigned as cross-error.

The ground of demurrer is that in an action against several persons, whether in contract or tort, all the causes of action must be stated to be joint—in other words, that the declaration was demurrable because it alleged a joint tort in two of the counts and a several tort in each of the other two.

Mr. Chitty, in Vol. 2 (16th ed.) of his work on Pleading, side page 225, says: "In actions by and against several parties, whether *ex contractu* or *ex delicto*, all the causes of action must be stated to be joint. Thus a plaintiff cannot, in a declaration against two defendants, state that one of them assaulted him, and in another part that the other assaulted him, or took his goods, for the trespasses are of several natures and against several persons, and they cannot plead to this declaration."

In the case of *McMullen* v. *Church,* 82 Va. 501, it was held in an action for malicious prosecution against two persons, that counts against them jointly and counts against them severally could not be joined, and that the court erred in not sustaining the demurrer to the declaration.

It is insisted further that this court should sustain the demurrer to the amended declaration and enter judgment for the defendants.

While we are of opinion that the circuit court erred in overruling the demurrer to the amended declaration, final judgment should not be entered by this court in favor of the defendants, but the judgment complained of should be reversed, the verdict set aside and the cause remanded to the circuit court with instructions to give the plaintiff leave to withdraw his joinder in the demurrer to the amended declaration, and if the said declaration be amended properly for further proceedings not inconsistent with the views expressed in this opinion. *Creel* v. *Brown,* 1 Rob. (40 Va.) 281; *Hansbrough* v. *Stinnett,* 25 Gratt. (66 Va.) 495; *N. & W. Ry. Co.* v. *Stegall's Admr.,* 105 Va. 538, 544, 54 S. E. 19; *Penn. Ry. Co.* v. *Smith,* 106 Va. 645, 56 S. E. 567; Burks' Pl. and Pr. 363-4.

*Reversed.*